# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2542

UNITED STATES OF AMERICA,
Appellant

v.

PHILIP EPPS,
A/K/A PHILLIP EPPS

---

Appeal from the U.S. District Court, D. Del.
Chief Judge Colm F. Connolly, No. 1:23-cr-00030-001

Before: PORTER, FREEMAN, and CHUNG, *Circuit Judges*
Argued Oct. 22, 2025; Decided August 21, 2026

---

OPINION OF THE COURT

FREEMAN, *Circuit Judge*. When the jury in Phillip Epps' criminal trial reported a deadlock, the District Court gave a supplemental instruction that included the following language: "I understand you . . .are unable to come to a unanimous decision, but you have to." App. 463–64. That

language was incorrect. But Epps did not lodge an objection, and the jury later returned a guilty verdict.

Two weeks after the verdict, Epps sought a new trial because of the flaw in the supplemental instruction. The District Court granted a new trial, and the government now appeals. For the reasons that follow, we will REVERSE the District Court's order granting Epps a new trial and REMAND for further proceedings.

## I.

In February 2023, police in New Castle, Delaware, arrested a woman who was selling drugs from a motel room. A search of her motel room and her person yielded heroin and fentanyl in packets bearing "Papa Smurf" and "Skull Crusher" stamps.

That same day, the woman agreed to become a confidential informant ("CI") for the police. She told police that her drug supplier drove a white SUV and would be delivering more drugs to her at to the motel that evening. She gave police the phone number the supplier used to communicate with her (the "Supplier Phone Number"), and police monitored the CI's calls as she spoke with a male who used the Supplier Phone Number and arranged for a delivery of cocaine, heroin, and fentanyl.

That evening, the male using the Supplier Phone Number made regular calls to the CI. As police surveillance units waited near the motel, officers listened to the male give the CI updated arrival times as read from his GPS. When the male said he was two minutes away, the surveillance units went

on high alert. The officers saw a white SUV pull into the motel's parking lot at the arrival time the male had predicted. The CI called the Supplier Phone Number, and the male who answered said, "I'm here. I will be right in." App. 109. Police then approached the white SUV and arrested its only occupant: Epps.

During the arrest, police seized two iPhones from Epps' person. One of the iPhones (the "Supplier Phone") was associated with the Supplier Phone Number.

Police placed Epps in the back of a police car while they searched the white SUV. During the search, the police car's video camera recorded Epps making the following statements:

> Fuck man. I'm going to jail. I'm in jail. I got locked up, man, that's my karma, man. . . .
>
> Oh, my gosh you don't got the fucking key [unintelligible] to get in there. . . .
>
> I'm fucked. They set me up. Got me out here in Delaware man. They know where it's at. They know it's right there. They know it's there. Fuck. They know it's there.
>
> I got to make bail. [Unintelligible] thirsty [unintelligible] doing crazy

> shit that I ain't supposed to be doing.

App. 528–29.

The search recovered Epps' Pennsylvania identification card, the lease for his apartment in Pennsylvania, and registration and insurance cards in Epps' name for the white SUV. Police also spotted a "trap"—a locked aftermarket compartment—in the SUV. After towing the SUV to the police station, police opened the trap and found two firearms, ammunition, about $15,000 in cash, a digital scale, assorted drug paraphernalia, and drugs in a variety of packages. The smaller packages of drugs bore "Papa Smurf" and "Skull Crusher" stamps. Testing later revealed that the drugs marked "Papa Smurf" contained fentanyl and other substances, while the drugs marked "Skull Crusher" contained fentanyl, cocaine, methamphetamine, heroin, and other substances.

## II.

A grand jury returned an indictment charging Epps with three counts: (1) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) possession of a firearm by a person prohibited, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Epps proceeded to a jury trial on Count 1 and on the possession and interstate-commerce elements of Counts 2 and 3.

After the jury was selected, the District Court gave preliminary instructions and stated the following about unanimity:

> [Y]our verdict will have to be unanimous. All of you will have to agree on it or there will be no verdict.
>
> In the jury room when you deliberate, you'll discuss the case among yourselves, but, ultimately, each of you is going to have to make up your own mind. And this is a responsibility that you cannot avoid, and you should do your best, all right?

App. 25–26. It also instructed the jury that it must decide the facts based on the evidence presented and apply the law given by the court to those facts.

Over the course of one full day and into the next morning, the government presented the evidence summarized above, plus testimony about the iPhones found on Epps' person. A forensic analysis showed that the Supplier Phone was used to exchange the calls that the police monitored between the CI and her supplier. The Supplier Phone also contained WhatsApp conversations with third parties about purchasing large quantities of drug additives—the same additives that were used in the bags of drugs labeled "Papa Smurf" and "Skull Crusher."

Additionally, the Supplier Phone included a lengthy WhatsApp conversation with a contact named "Bags." That conversation showed that someone using the Supplier Phone sent Bags the image of a Papa Smurf logo and asked Bags to print that logo on white bags and ship them to an address in Pennsylvania. The user wrote, "Also, friend, can we agree that no one else will be able to use my logo, please?" App. 288. A government witness testified that stamps on drug packaging serve as branding that connects the drugs with the trafficker.

Finally, the user of the Supplier Phone sent selfies that appeared to be photographs of Epps.

Epps presented no evidence in his defense.

During closing arguments, defense counsel argued that the government had not met its burden of proof. Defense counsel pointed out that the CI never identified or provided a description of Epps as her supplier. He also argued that no physical evidence connected Epps to the guns, drugs, and money found in the SUV.

When the District Court delivered its final instructions, it said the following about unanimity: "Whatever your verdict is, it will have to be unanimous. All of you have to agree on it, or there will be no verdict." App. 429. It also instructed that each juror "will have to make up his or her own mind." App. 429–30. And it told the jury:

> [I]t's your vote, your individual vote, and don't ever change your mind just because other jurors see things differently or just to get the

> case over with. It's important for you to reach a unanimous agreement, but only if you can do so honestly and in good conscience.

App. 453. It provided printed copies of its final instructions to the jury.

That afternoon, after just under three hours of deliberations, the jury informed the District Court that it was deadlocked. The District Court proposed the following course of action to the parties: "[W]e bring them in, tell them they are going to have [to] deliberate. It's their job. They have to apply the law to the facts; they've taken an oath." App. 462. Counsel for both sides agreed with that proposal. Counsel for the government then noted that Third Circuit Suggested Standard Criminal Jury Instruction 9.05 is "the instruction [the District Court] just described" and offered to obtain a copy of that instruction. The District Court responded that it would read that instruction if someone provided a copy, but defense counsel said the District Court's proposed language was a more succinct version of the suggested instruction. The District Court proceeded without the suggested standard instruction.

When the jury returned to the courtroom, the District Court gave the supplemental instruction that is the subject of this appeal. Because the language of that instruction is so important to our decision, we quote it here in full:

> All right. **I understand you have a note, and the note is you are**

**unable to come to a unanimous decision, but you have to.**

So you know, you all took an oath, and this has only been a few hours. We've had juries deliberate in this building for days. We just a [sic] had a jury deliberate for three days in a patent case.

This is a criminal case, so I need you to all go back and do your best, follow the instructions I gave you. Focus on the evidence. This is a court of justice, and you are not to focus on anything but evidence. You are supposed to apply your common sense and your reason, looking at the evidence and applying the law as I give you.

Remember, you took an oath. You may not like the laws that are at play, but you took an oath. We are a country that's guided by law, and you have to do your best.

You know, we live in a world, and it's certainly never been more divisive at any time in my lifetime, the country. I take great heart in I get to see jurors work together, listen to each other and then do

> their duty, and I'm always heartened by that. I see it time and time again. It makes me feel good about the country because I know the job can get done.
>
> So you've got the time. Be respectful to each other, listen to each other, and apply the law to the facts, the evidence.
>
> Remember, you are not to be motivated by biases or sympathy or prejudice of [sic] any kind of preconceived notions. You are just to apply the law to the facts.
>
> All right. So we're here all afternoon. If we have to, we can come back, and so those are the instructions, okay.
>
> Okay. Thank you.

App. 463–65 (emphasis added).

When the jury left the courtroom to resume its deliberations, counsel for both parties confirmed that they were "okay" with the supplemental instruction. App. 465.

An hour and a half later, the jury returned a verdict. It found Epps guilty of Count 1. As to Counts 2 and 3, it found that Epps possessed one or both of the firearms listed in the

indictment and that his possession affected interstate commerce.

Two weeks after the District Court entered the verdict, Epps filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. He argued that the District Court's supplemental instruction—which he asserted "basically instructed the jury to continue deliberating until they reached a verdict"—was unduly coercive. App. 486.

During oral argument on the motion, the District Court acknowledged its mistake in saying "you have to" reach a unanimous verdict rather than saying "you have to *try*" to do so. App. 507 (emphasis added). The District Court considered that mistake alongside its prior instructions and the supplemental instruction as a whole, and it concluded that its mistake did not force the jury to return a verdict. It denied the Rule 33 motion on that basis. It then held a bench trial on the remaining elements of Counts 2 and 3, and it found Epps guilty of both counts.

Several weeks later, the District Court sua sponte reconsidered its order on the Rule 33 motion. It explained that, upon further review of the relevant authority, "the interest of justice requires a new trial." App. 3. It therefore vacated its prior order and granted Epps' Rule 33 motion. The government timely appealed.

## III.[1]

A jury is not required to reach a verdict. When the District Court said otherwise in its supplemental jury instruction, that was an incorrect statement of law. But we review jury instructions "not in artificial isolation, but in the context of the overall charge." *United States v. Brennan*, 326 F.3d 176, 192 (3d Cir. 2003) (citation modified). And, despite the District Court's incorrect statement, the overall jury charge instructed the jury to focus on the evidence and to reach a verdict based only on the law and the facts. The full supplemental instruction reminded the jury of that obligation. So, when we consider the incorrect statement in context, we are satisfied that it does not support the grant of a new trial because the jury charge was not unduly coercive. *See United States v. Jackson*, 443 F.3d 293, 297–98 (3d Cir. 2006) (assessing undue coercion by asking whether a charge caused a jury to reach a verdict for reasons other than the evidence in the record).

### A.

Before turning to the substance of the supplemental instruction, we dispose of a threshold question: whether Epps invited any error in the supplemental instruction. He did not.

"Under the invited error doctrine, a defendant cannot complain on appeal of alleged errors invited or induced by himself." *United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012) (citation modified). For instance, when a defendant

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3731.

requests "certain [jury] instructions, he waives the right to complain of error in such instructions on appeal." *United States v. Andrews*, 681 F.3d 509, 517 n.4 (3d Cir. 2012).[2] But the invited error doctrine only bars appellate review of a jury instruction where a party "specifically assented to the jury instruction at issue, an instruction that had been the subject of litigation." *United States v. Henderson*, 64 F.4th 111, 116 (3d Cir. 2023). It does not apply when a party "simply acquiesced" to "an error that was never in dispute." *Id.* at 117. Acquiescence to an error constitutes a forfeiture, not a waiver. *Id.*; *see also id.* at 116 ("Waiver is the intentional relinquishment or abandonment of a known right, while forfeiture is the failure to make the timely assertion of a right." (citation modified)). That forfeiture triggers plain error review, but it does not preclude review altogether. *Id.* at 117.

The government argues that Epps invited error when it "urged the District Court to ad lib its own deadlock instruction" rather than waiting for the prosecutor to provide a copy of the model jury instruction to the District Court. Opening Br. 22. The government insists that this constitutes a waiver that precluded the District Court from reaching the merits of Epps' Rule 33 motion.

---

[2] Similarly, if a defendant objects to a certain instruction, he cannot later complain that the trial court erred by failing to give it. *See United States v. Stewart*, 185 F.3d 112, 126–27 (3d Cir. 1999).

The government's invited error theory is incompatible with the record.[3] Epps did not ask the District Court to make an incorrect statement. The District Court proposed a deadlock instruction that was appropriate, and Epps agreed. Epps did not need to insist that the District Court read a model jury instruction to avoid any potential misstatement. The District Court's subsequent misstatement was not foreseeable. Moreover, our model jury instructions are suggestions, not requirements. *See United States v. Savage,* 970 F.3d 217, 285 n.76 (3d Cir. 2020) ("Our Model Jury Instructions are not binding on District Courts, . . . and a variance from the model instruction does not necessarily constitute error.").

Insofar as the government argues that Epps invited an error *after* the District Court gave the supplemental instruction, it again misses the mark. A party does not "invite, or provoke, or cause" something after it occurs. *See Henderson*, 64 F.4th at 117 (citation modified). So when Epps' counsel said he was "okay" with the instruction, App. 465, he "simply acquiesced" to a supplemental instruction that "was never in dispute," *Henderson*, 64 F.4th at 117. That was a forfeiture, not an invited error. *Id.*

**B.**

We normally review an order granting a Rule 33 motion for abuse of discretion. *United States v. Quiles*, 618 F.3d 383, 390 (3d Cir. 2010). But a district court "abuses its discretion when it makes an error of law," so our abuse-of-discretion

[3] Because there was no invited error here, we do not address the government's argument that the invited error doctrine should apply to post-trial motions in addition to appeals.

standard "includes review to determine that the discretion was not guided by erroneous legal conclusions." *United States v. Kelly*, 539 F.3d 172, 181 (3d Cir. 2008) (citation modified). And our review of a Rule 33 order is de novo "[t]o the extent that we are reviewing a legal rather than discretionary decision of the District Court." *Quiles*, 618 F.3d at 390.

In addition to the above, two other remedial standards are relevant to this appeal. One is plain error—the standard we apply when we review a jury instruction that was not subject to a timely objection in the district court. *Brennan*, 326 F.3d at 192. That standard is prescribed by Federal Rule of Criminal Procedure 30(d), under which a party who opposes a jury instruction must object "before the jury retires to deliberate," and the failure to do so "precludes appellate review, except as permitted under Rule 52(b)." Fed. R. Crim. P. 30(d). In turn, Rule 52(b) states that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. Crim. P. 52(b).[4]

[4] Under the plain error standard, an appellant must show "(1) a legal error (2) that is plain and (3) that has affected his substantial rights." *United States v. Dorsey*, 105 F.4th 526, 528 (3d Cir. 2024) (citing *United States v. Olano*, 507 U.S. 725, 732–33 (1993)); *see also id.* (stating that an error affects substantial rights if it is prejudicial—i.e., if it "affected the outcome of the district court proceedings") (quoting *Olano*, 507 U.S. at 734). If the appellant satisfies those three requirements, we have discretion to correct the error if "(4) it seriously affects the fairness, integrity, or reputation of judicial proceedings." *Id.* (citing *Olano*, 507 U.S. at 732).

According to the government, the District Court was required to apply plain error review when reviewing Epps' Rule 33 motion, and the District Court's failure to do so amounted to an abuse of discretion.[5] Opening Br. 23. But that is not required by Rule 30(d), or at least not directly. By its terms, Rule 30(d) addresses the standard for "appellate review" of a jury instruction that was not subject to a timely objection. Fed. R. Crim. P. 30(d). The Rule says nothing about the standard a district court must apply to a belated claim of instructional error, and we need not address that to decide this case.[6]

That brings us to the last remedial standard relevant here: Rule 33's interest-of-justice standard. Rule 33 permits a criminal defendant to file a post-verdict motion for a new trial, either based on newly discovered evidence or for "any other reason." Fed. R. Crim. P. 33(b). No matter the basis for a defendant's new-trial motion, Rule 33 permits a district court

[5] Both parties invoked the plain error standard in the District Court when Epps sought Rule 33 relief. Epps contends that the District Court implicitly applied plain error review despite not mentioning that standard in its decision.

[6] Moreover, this is not an appeal of an instructional error. The appellant here (the government) seeks review of a Rule 33 order. In doing so, it argues that there was no instructional error. Opening Br. 23–31 (arguing that the supplemental instruction was not unduly coercive, and thus not erroneous, when viewed in full and in light of the jury instructions as a whole).

to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

So how do we reconcile these standards in this case?

Following our precedent, we review the District Court's Rule 33 order for abuse of discretion and apply de novo review to the underlying legal conclusions. *Quiles*, 618 F.3d at 390. This means we apply de novo review to the legal basis for the Rule 33 order: the purported undue coercion of the unanimity instruction. *See Jackson*, 443 F.3d at 297–98 (reviewing undue coercion as a question of law). Doing so reveals no undue coercion when we view the supplemental instruction in full and in the context of the complete jury charge. *See infra* Section III.C.

When the District Court reviewed Epps' Rule 33 motion, it was correct to apply the interest-of-justice standard contained within Rule 33. And we need not decide whether the District Court should have incorporated plain error review into its interest-of-justice analysis. It suffices to say that the District Court abused its discretion when it granted a new trial based on a supplemental instruction that included incorrect language but was not unduly coercive. *See Kelly*, 539 F.3d at 181.[7] Because the new trial order was based on an incorrect application of law, it was not in the interest of justice.

---

[7] The outcome of this appeal would be the same even if the District Court was required to apply plain error review.

**C.**

In criminal cases, where any jury verdict must be unanimous, "[t]here will always be three possible decisions of the jury: (1) not guilty of any charge; (2) guilty of one or more counts of the indictment; and (3) no verdict because of a lack of unanimity." *United States v. Fioravanti*, 412 F.2d 407, 416 (3d Cir. 1969). And we have long recognized that "[t]he possibility of a hung jury is as much a part of our jury unanimity schema as are verdicts of guilty or not guilty." *Id.* So when the District Court instructed Epps' jury that it "ha[d] to" reach a unanimous verdict, that was an incorrect statement of law. *See id.* ("[I]t is a cardinal principle of the law that a trial judge may not . . . demand[] that [a jury] return a verdict."); *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (granting a new trial, upon review of the full context and circumstances, after a district court told a deadlocked jury, "You have got to reach a decision in this case.").

But a flawed unanimity instruction only prejudices the jury if the instruction was "unduly coercive." *Jackson*, 443 F.3d at 297. To assess undue coercion, we review the challenged instruction "in its context and under all the circumstances." *Jenkins*, 380 U.S. at 446. And when the problem was in a supplemental instruction, "we review the supplemental instruction . . . not in artificial isolation, but in the context of the overall charge." *Jackson*, 443 F.3d at 297 (citation modified). We deem a supplemental instruction unduly coercive only if it "caused the jury to be influenced by concerns irrelevant to their task and reach[] its subsequent verdict for reasons other than the evidence presented to it." *Id.* (citation modified).

Here, the supplemental instruction was not unduly coercive. The record shows that the District Court was not trying "to blast a hung jury into verdict" when it gave the supplemental instruction. *Id.* (citation modified). Instead, the District Court made a misstatement after repeatedly giving the jury correct instructions about unanimity.

In its preliminary instructions on the first day of trial, the District Court told the jury that there would be no verdict absent unanimous agreement. That implicitly acknowledged the possibility that the jury would return "no verdict because of a lack of unanimity." *Fioravanti*, 412 F.2d at 416. And on the second (and last) day of trial, the District Court's final charge again included a correct statement about unanimity: "Whatever your verdict is, it will have to be unanimous." App. 429.

In both its preliminary and final instructions, the District Court said each juror would need to make up his or her own mind. In the final charge, the District Court said, "[I]t's your vote, your individual vote, and don't ever change your mind just because other jurors see things differently or just to get the case over with. It's important for you to reach a unanimous agreement, but only if you can do so honestly and in good conscience." App. 453. The District Court also repeatedly told the jury that it must make its decision based solely on the evidence presented during trial.

A few hours after giving the final jury charge, the District Court made its incorrect statement about unanimity. But it did not make that statement in isolation. The supplemental instruction also repeated correct messaging, reminding the jury: "[Y]ou've got the time. Be respectful to

each other, listen to each other, and apply the law to the facts, the evidence. Remember, you are not to be motivated by biases or sympathy or prejudice o[r] any kind of preconceived notions. You are just to apply the law to the facts." App. 464–65. So, unlike cases in which we discerned undue coercion, the District Court's supplemental instruction never introduced improper considerations into the jury's deliberations. *See, e.g.*, *United States v. E. Med. Billing, Inc.*, 230 F.3d 600, 615 (3d Cir. 2000) (addressing supplemental instruction that "drew the jurors' attention to issues irrelevant to their task," including "that continued deadlock would unnecessarily burden the Court and the parties"); *United States v. Burley*, 460 F.2d 998, 999 (3d Cir. 1972) (finding prejudice to a party where the court's supplemental instruction communicated that a dissenting juror "should consider the expense of a new trial to the government and [the] imposition upon the time of many people as a significant factor that could and should persuade her to change her vote.").

Nor did the supplemental instruction encourage any jurors to change their votes or otherwise disparage the views of any jurors. *See Fioravanti*, 412 F.2d at 415–20 (discussing "the very real treachery of the Allen Charge"—a charge that "direct[s] a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his"); *E. Med. Billing, Inc.*, 230 F.3d at 613 (granting a new trial where an instruction "portrayed the minority jurors as holding less intelligent or reasonable views than the majority jurors" and "indicated to the jurors that the views held by the minority merited reexamination").

Considering all this, the supplemental instruction, reviewed in full and in context, "did not so prejudice the jury's

deliberations such that the jury reached [its] verdict upon considerations of matters other than the evidence in the record." *Jackson*, 443 F.3d at 298. So it was not unduly coercive. *Id.* at 297.

We note, however, that even in cases where we deem a jury instruction unduly coercive (and where the defendant made a timely objection), that does not end our inquiry on appeal. Before we grant a new trial, we must be convinced that a coercive jury instruction had a prejudicial effect on the verdict in that particular case. *See E. Med. Billing*, 230 F.3d at 614. So we review the entire record, including the "coercive content of the instruction," the strength of the evidence, the timing of the challenged instruction, and the subsequent and total length of the jury's deliberations. *See id.* (reviewing these considerations where the trial court gave a coercive Allen charge).

Because a prejudice review is required in those circumstances, it follows that a district court must conduct a prejudice review before it grants Rule 33 motion based on a flawed unanimity instruction. After all, justice is not served if a non-prejudicial error disturbs a jury's verdict. *See* Fed. R. Crim. P. 33(a).

A review of the entire record reinforces that the District Court's incorrect statement does not warrant a new trial.

Critically, the supplemental instruction had minimal coercive content. For the reasons discussed above, any coercion created by the incorrect statement "was mitigated by the[] accompanying strong warnings and reminders," plus those in the full jury charge. *Jackson*, 443 F.3d at 298.

Moreover, the evidence of Epps' guilt was overwhelming. *Cf. E. Med. Billing*, 230 F.3d at 614 (observing that the government's evidence at trial was "not overwhelming"); *Gov't of Virgin Islands v. Hernandez*, 476 F.2d 791, 793 & n.2 (3d Cir. 1973) (same). During trial, the defense was unable to meaningfully impeach the government's evidence that Epps was the CI's drug supplier, that Epps possessed the drugs and firearms locked in the trap of his white SUV, and that he came to the CI's motel to deliver drugs packaged in his signature "Papa Smurf" and "Skull Crusher" bags—just like the drugs the CI sold from her motel room earlier that day.

Although some factors suggest the possibility of prejudice,[8] they carry little weight given the full circumstances of this case—in particular, the minimal coercive content of the challenged instruction and the overwhelming evidence of Epps' guilt.

We commend the District Court for its careful attention to the incorrect statement in its supplemental instruction. But because the jury charge was not unduly coercive and did not prejudice Epps, we will reverse the District Court's order granting a new trial.

---

[8] For instance, the District Court made its incorrect statement in response to a deadlock note rather than in the main jury charge, the jury deliberated for nearly three hours before sending the note, and its subsequent deliberations were relatively short. *See E. Med. Billing*, 230 F.3d at 614–15; *cf. Lowenfield v. Phelps*, 484 U.S. 231, 240–41 (1988).

* * *

For the above reasons, we will REVERSE the District Court's order and REMAND for further proceedings.

*Counsel for Appellant*

Carly A. Hudson
Jesse S. Wenger [Argued]
OFFICE OF THE UNITED STATES ATTORNEY

*Counsel for Appellee*

Robert M. Gamburg [Argued]
GAMBURG & BENEDETTO LLC